# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

**MYRA L. PERRIGO,**

        Plaintiff,

v.

**CAROLYN W. COLVIN,**
Commissioner of Social
Security,[1]

        Defendant.

**No. 12-CV-4102-DEO**

**ORDER**

—————————————

This matter is before the Court pursuant to Myra Perrigo's [hereinafter Ms. Perrigo] application for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401 et seq, and application for supplemental security income benefits ("SSI") based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq. The parties appeared for a hearing on August 26, 2013. After considering the parties' arguments, the Court took the matter under advisement and now enters the following:

---

[1] Ms. Perrigo originally filed this case against Michael J. Astrue, Comm. of Social Security. On February 14, 2013, Carolyn W. Colvin became the Commissioner of SSA. The Court, therefore, substitutes Commissioner Colvin as the defendant in this action. Fed. R. Civ. P. 25(d)(1).

## I. FACTUAL BACKGROUND

Ms. Perrigo was born January 27, 1956, and was 55 years old at the time of the hearing. She lives alone in an apartment in Milford, Iowa. She is divorced, with no minor children.[2] She is a high school graduate and attended some college, but has no degree. Her last significant employment was at Winnebago Industries as a saw operator from 1999-2004. Prior to that, she worked as child care worker, a telemarketer, a poultry dresser, and as an assembly bench worker. She alleges disability under a number of conditions that will be addressed more fully below.

Ms. Perrigo testified that prior to her knee replacement in 2009, that "my knee would creak so bad that you could hear it." Docket No. 6, Tr. 48. She went on to say that her knee was very painful and that she could barely get up and down the stairs. Docket No. 6, Tr. 48. Ms. Perrigo stated that she could not stand for any length of time. She told the ALJ that

---

[2] Although the transcript of the testimony before the ALJ is not clear, it seems that Ms. Perrigo has at least one adult son, since elsewhere in the record there are references to her son and grandchildren. See, for example, the Functional Report, Docket No. 6, Tr. 220, where Ms. Perrigo talks about spending time with her grandchildren.

her knee problems predated her surgery by at least a year. Docket No. 6, Tr. 49.

Ms. Perrigo testified about the breakdown she suffered in 2009. Docket No. 6, Tr. 47. She was involuntary hospitalized on June 5, 2009, after an incident in which she attacked her mother. Id. Since that involuntary commitment, she has been subject to court ordered mental health treatment. Docket No. 6, Tr. 46-47.

Ms. Perrigo testified that when she worked at Winnebago, she tore a rotator cuff that required surgical correction. Docket No. 6, Tr. 53. She testified that she never regained full use of her shoulder after surgery. Docket No. 6, Tr. 53.

## II.  PROCEDURAL HISTORY

On March 3, 2009, Ms. Perrigo protectively filed for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401 et seq. Plaintiff also filed an application for supplemental security income benefits ("SSI") based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq. Ms. Perrigo alleged an onset date of May 18, 2004. The claims were denied initially on September 1, 2009, and on reconsideration on March 9, 2010. On May 10,

2011, the Plaintiff appeared in Spencer, Iowa, for a telephone hearing. On June 23, 2011, the Administrative Law Judge ("ALJ") found plaintiff was not under a disability as defined in the Act prior to January 26, 2011. However, the ALJ found that as of January 26, 2011, plaintiff was disabled (Tr. 8-25). Ms. Perrigo appealed the denial of benefits prior to January 26, 2011, to the Appeals Council. The Appeals Council denied her request on September 9, 2012. Ms. Perrigo filed the present Complaint on November 21, 2012.

The ALJ set out the issue presently before the Court:

> [t]he issue is whether the claimant is disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. With respect to the claim for a period of disability and disability insurance benefits, there is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2009. Thus, the claimant must establish disability on or before that date

> in order to be entitled to a period of disability and disability insurance benefits.

Docket No. 6, Tr. 11.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to benefits. 20 C.F.R. § 404.1520. The five successive steps are: (1) determination of whether a plaintiff is engaged in "substantial gainful activity," (2) determination of whether a plaintiff has a "severe medically determinable physical or medical impairment" that lasts for at least 12 months, (3) determination of whether a plaintiff's impairment or combination of impairments meets or medically equals the criteria of a listed impairment, (4) determination of whether a plaintiff's Residual Functional Capacity (RFC) indicates an incapacity to perform the requirements of their past relevant work, and (5) determination of whether, given a plaintiff's RFC, age, education and work experience, a plaintiff can "make an adjustment to other work." 20 C.F.R. § 404.1520(4)(i-v).

At step one, if a plaintiff is engaged in "substantial gainful activity" within the claimed period of disability, there is no disability during that time. 20 C.F.R. § 404.1520(a)(4)(i). At step 2, if a plaintiff does not have a "severe medically determinable physical or mental impairment" that lasts at least 12 months, there is no disability. 20 C.F.R. § 404.1520(a)(4)(ii). At step 3, if a plaintiff's impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and last at least 12 months, a plaintiff is deemed disabled. 20 C.F.R. § 404.1520(e). Before proceeding to step 4 and 5, the ALJ must determine a plaintiff's Residual Functional Capacity [RFC]. RFC is the "most" a person "can still do" despite their limitations. 20 C.F.R. § 404.1545(a)(1). The RFC an ALJ assigns a plaintiff has been referred to as the "most important issue in a disability case . . . ." Malloy v. Astrue, 604 F. Supp. 2d 1247, 1250 (S.D. Iowa 2009) (citing McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982)(en banc)). When determining RFC, the ALJ must consider all of the relevant evidence and all of the Plaintiff's impairments, even those which are not deemed

severe, as well as limitations which result from symptoms, such as pain. 20 C.F.R. § 404.1545(a)(2) and (3). An ALJ "may not simply draw his own inferences about a plaintiff's functional ability from medical reports." Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004).

At step 4, if, given a plaintiff's RFC, a plaintiff can still perform their past relevant work, there is no disability. 20 C.F.R. § 404.1520(a)(4)(iv). At step 5, if, given a plaintiff's RFC, age, education, and work experience, a plaintiff can make an adjustment to other work, there is no disability. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v). This step requires the ALJ to provide "evidence" that a plaintiff could perform "other work [that] exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2). In other words, at step 5, the burden of proof shifts from a plaintiff to the Commissioner of the S.S.A.. Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984). The ALJ generally calls a Vocational Expert (VE) to aid in determining whether this burden can be met.

In this case, the ALJ applied the appropriate methodology and found that Ms. Perrigo meets the insured status

requirements through December 31, 2009. Additionally, the ALJ found that Ms. Perrigo has not engaged in substantial gainful activity since the alleged onset date. Docket No. 6, Tr. 13. The ALJ stated that Ms. Perrigo suffers from the following severe impairments: obesity; arthritis of the right knee (total knee replacement in 2009); carpal tunnel syndrome; right shoulder pain (status post decompression surgery 2004) and depression (20 CFR 404.1520(c) and 416.920(c)). Docket No. 6, Tr. 13. The ALJ also found that Ms. Perrigo had several non-severe impairments, including: lupus, breast cancer, high blood pressure and high cholesterol, and fibromyalgia. However, the ALJ found that Ms. Perrigo did not suffer from a disability as contemplated by the Social Security Code from her alleged onset date until January 26, 2011. Specifically, the ALJ stated:

> [s]ince the alleged onset date of disability, May 18, 2004, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). Although the claimant has impairments which are considered to be "severe", they are not attended, singly or in combination, with the specific clinical signs and diagnostic

findings required to meet or equal the
requirements set forth in Appendix 1,
Subpart P, Regulations No. 4.

Docket No. 6, Tr. 15. The ALJ applied the appropriate

methodology and found that Ms. Perrigo only had mild

restrictions in daily function based on her mental disorders.

Docket No. 6, Tr. 15-16.

The ALJ went on to consider residual functional capacity

and concluded:

> [a]fter careful consideration of the entire
> record, the undersigned finds that since
> May 18, 2004, the claimant has the residual
> functional capacity to perform less than a
> full range of light work as defined in 20
> CFR 404.1567(b) and 416.967(b). She can
> frequently lift ten pounds and occasionally
> lift twenty pounds. The claimant is able
> to sit, stand or walk for six hours each in
> an eight-hour workday. She is able to
> handle and finger frequently and
> occasionally reach overhead and in other
> directions. The claimant can continuously
> push and/or pull at a light strength level.
> She can occasionally climb stairs or ramps,
> but never ladders, ropes or scaffolds. The
> claimant is limited to occasional
> balancing, stooping, kneeling, crouching or
> crawling. She can be exposed to
> unprotected heights, moving mechanical
> parts and extreme vibrations occasionally.
> The claimant is able to understand short,
> simple instructions and can be exposed to
> brief and superficial contact with others.

Docket No. 6, Tr. 16-17. The ALJ then considered the plaintiff's credibility under the <u>Polaski</u> standard and stated:

> [i]n making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p... Because a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the undersigned must consider in addition to the objective medical evidence when assessing the credibility of the claimant's statements... After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment.

Docket No. 6, Tr. 17-18. The ALJ considered each of Ms. Perrigo's severe impairments and determined that they were not debilitating at the time of her alleged onset date. Docket

No. 6, Tr. 19-20.  The ALJ then turned to Ms. Perrigo's work

history and stated:

> [t]he claimant's past work history is
> neither positive nor negative.  While she
> worked for nearly seven years at
> substantial gainful activity levels just
> prior to her alleged onset date, a review
> of her work history shows that she worked
> only sporadically prior to that time, which
> raises a question as to whether the
> claimant's continuing unemployment is
> actually due to her medical impairments
> (Exhibit 6D).  In fact, records from Iowa
> Vocational Rehabilitation Services indicate
> that she was attending school to become an
> accountant in 2005, 2006 and 2007, despite
> her claims that she was totally disabled at
> that time (Exhibit 12E).

Docket No. 6, Tr. 21.

    The ALJ also considered Ms. Perrigo's testimony that she

had a hard time doing housework because of her impairments.

The ALJ did not find Ms. Perrigo's testimony persuasive,

stating:

> [t]he claimant maintained that her
> activities of daily living are limited, but
> these activities are consistent with her
> residual functional capacity.  She lives
> alone in her own apartment and is able to
> perform a variety of household chores
> (testimony).  The claimant specifically
> related that she takes out the garbage,
> makes her bed, cooks simple things, washes
> dishes, vacuums, sweeps and washes her own
> clothing.  She went on to say that she goes

11

> grocery shopping by herself and is able to
> dress and shower without assistance.
> During the period in question, she attended
> three years of college and took accounting
> classes (testimony). The claimant told the
> undersigned that she had problems
> remembering how to do the accounting
> homework after she left the classroom, but
> she also indicated that she did not
> complete her degree because she transferred
> to another college which required more.
> According to her testimony, she is able to
> understand the plot of a movie and she
> emails every few months when she has access
> to the internet. However, in earlier
> reports, the claimant noted daily use of
> the computer to keep in contact with
> friends (Exhibits 8E, 15E, 18E).

Docket No. 6, Tr. 21. The ALJ similarly emphasized only the
portion of the of the third party report provided by Anne
Hagedorn that supported the ALJ's RFC. Id.

The ALJ gave little weight to some of Ms. Perrigo's prior
physicians. The ALJ stated:

> [a]s for the opinion evidence, the
> undersigned considered the statements made
> by physicians assistant James Rusch and
> examining physician Jeffrey Krohn, M.D.
> (Exhibit 8F). They examined the claimant
> on April 2, 2007, and determined that the
> claimant could only walk about a block and
> a half without need[ing] to rest (Exhibit
> 8F). They also noted that the claimant
> would have no trouble bending, but that
> squatting would be a problem if it were
> repetitive (Exhibit 8F). Mr. Rusch and Dr.
> Krohn went on to say that the claimant

would have some trouble lifting, crawling
and getting up from a kneeling position,
but seemed to have no trouble handling
objects, seeing, hearing or speaking
(Exhibit 8F). They further noted no
environmental concerns (Exhibit 8F).
Little weight has been rendered to their
opinion for several reasons. First of all,
they appeared to rely quite heavily upon
the claimant's subjective report of
symptoms and limitations provided, and
seemed to uncritically accept as true most,
if not all, of what the claimant reported.
Yet, as explained elsewhere in this
decision, there exist good reasons for
questioning the reliability of the
claimant's subjective complaints. In
addition, the physicians failed to
elaborate on the functional limitations
with respect to the claimant's postural
abilities.

Docket No. 6, Tr. 21-22. The ALJ gave great weight to the
opinion of occupational therapist Stephanie McClellan, who
stated Ms. Perrigo could do light physical demand level work.
Docket No. 6, Tr. 22. The ALJ concluded his medical analysis:

[t]he residual functional capacity
conclusions reached by the physicians and
psychologists employed by the State
Disability Determination Services (DDS)
supported a finding of "not disabled."
(Exhibits 10F, 11F, 14F, 15F, 26F, 27F,
35F, 36F). Although those physicians and
psychologists were non-examining, and
therefore their opinions do not as a
general matter deserve as much weight as
those of examining or treating physicians
and psychologists, those opinions do

13

> deserve some weight, particularly in a case
> like this in which there exist a number of
> other reasons to reach similar conclusions
> (as explained throughout this decision).
> Still, the undersigned considered the
> claimant's testimony in determining that
> she is limited to following short, simple
> instructions and only brief and superficial
> contact with others. In sum, the above
> residual functional capacity assessment is
> supported by the objective medical
> evidence, the claimant's treatment history,
> work history, activities of daily living,
> Ms. [Hagedorn's] statement, the findings
> from the Functional Capacity Evaluation,
> DDS opinions and the record as a whole.

Docket No. 6, Tr. 22.

The ALJ concluded that Ms. Perrigo was unable to return to past relevant work. However, the ALJ stated that prior to January 26, 2011, there were jobs that existed in significant number in the national economy that the claimant could have performed, specifically in the light work range. However, the ALJ stated that after January 26, 2011, Ms. Perrigo's age category changed to a person of advanced age, and there were no longer jobs available that she could perform when he applied Medical-Vocational Rule 202.06. Docket No. 6, Tr. 23-24. The ALJ concluded:

> [t]he claimant was not disabled prior to
> January 26, 2011, but became disabled on
> that date and has continued to be disabled

14

through the date of this decision (20 C.F.R. § 404.1520(g) and 416.920(g)). The claimant was not under a disability within the meaning of the Social Security Act at any time through December 31, 2009, the date last insured (20 CFR 404.315(a) and 404.320(b))... Based on the application for a period of disability and disability insurance benefits filed on March 18, 2009, the claimant was not disabled under sections 216(i) and 223(d), respectively, of the Social Security Act through December 31, 2009, the date last insured. Based on the application for supplemental security income filed on March 18, 2009, the claimant has been disabled under section 1614(a)(3)(A) of the Social Security Act beginning on January 26, 2011.

Docket No. 6, Tr. 24.

## III.  STANDARD OF REVIEW

This Court's role in review of the ALJ's decision requires a determination of whether the decision of the ALJ is supported by substantial evidence on the record as a whole. See 42 U.S.C. § 405(g); Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008).  Substantial evidence is less than a preponderance but enough that a reasonable mind might find it adequate to support the conclusion in question.  Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008) (citing Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007)).  This Court must consider both evidence that supports and detracts from the

15

ALJ's decision.  <u>Karlix v. Barnhart</u>, 457 F.3d 742, 746 (8th Cir. 2006) (citing <u>Johnson v. Chater</u>, 87 F.3d 1015, 1017 (8th Cir. 1996)).  In applying this standard, this Court will not reverse the ALJ, even if it would have reached a contrary decision, as long as substantial evidence on the record as a whole supports the ALJ's decision.  <u>Eichelberger v. Barnhart</u>, 390 F.3d 584, 589 (8th Cir. 2004).  The ALJ's decision shall be reversed only if it is outside the reasonable "zone of choice."  <u>Hacker v. Barnhart</u>, 459 F.3d 934, 936 (8th Cir. 2006) (citing <u>Culbertson v. Shalala</u>, 30 F.3d 934, 939 (8th Cir. 1994)).

This Court may also ascertain whether the ALJ's decision is based on legal error.  <u>Lauer v. Apfel</u>, 245 F.3d 700, 702 (8th Cir. 2001).  If the ALJ applies an improper legal standard, it is within this Court's discretion to reverse his/her decision.  <u>Neal v. Barnhart</u>, 405 F.3d 685, 688 (8th Cir. 2005); 42 U.S.C. 405(g).

## IV.  ISSUES

In her brief, Ms. Perrigo argues that the hypothetical posed by the ALJ did not contain an accurate description of her limitations.  Additionally, during the hearing, Ms.

Perrigo argued that "nothing on the record challenges her credibility" and that the ALJ's credibility determination was not accurate.

## V.  ANALYSIS

In order for a plaintiff to qualify for disability benefits, they must demonstrate they have a disability as defined in the Social Security Act [hereinafter the Act].  The Act defines a disability as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

42 U.S.C. § 423(d)(1)(A).

### A. Credibility and Medical Evidence

The first argument the Court will address is an issue Plaintiff's counsel raised during the hearing.  Plaintiff's counsel argued that "nothing on the record challenges [Ms. Perrigo's] credibility" and that the ALJ's credibility determination was not accurate.[3]

---

[3]  In her brief, Ms. Perrigo did argue that she should "be believed."  Docket No. 11, p. 11.  However, that comment had no citation to case law and was not accompanied by any other

The standard regarding credibility findings is well settled. "In order to assess a claimant's subjective complaints, the ALJ must make a credibility determination by considering the claimant's daily activities; duration, frequency, and intensity of the pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medication; and functional restrictions." Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir. 2008) citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ may not discount subjective complaints solely because they are not supported by objective medical evidence. An ALJ must have sufficient justification for doubting a claimant's credibility. See Wildman v. Astrue, 596 F.3d 959, 968 (8th Cir. 2010) (quoting Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007)). However, "[a] disability claimant's subjective complaints of

explanation. This Court has previously stated that Social Security plaintiffs who wish to attack an ALJ's determination on a topic, such as credibility, should structure those points as independent arguments in their brief. See Klimes v. Colvin, 12-CV-4074-DEO, 2013 WL 5447850, Fn's 2-3 (N.D. Iowa 2013). For example, regarding a credibility determination, counsel should set out legal arguments relying on Polaski and the other applicable legal standards. As Judge Posner famously observed, "[j]udges are not like pigs, hunting for truffles buried in briefs." United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991).

pain may be discounted if inconsistencies in the record as a whole bring those complaints into question." Gonzales v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006).

As stated above, the ALJ may only discount the plaintiff's complaints if they are inconsistent with the record as a whole. During the hearing, Ms. Perrigo testified that she could not perform any of her past jobs. Docket No. 6, Tr. 39. She testified that "my shoulder is messed up and I can't move it like I should. I can't reach like I should and I can't hold pencils and stuff because of the carpal tunnel." Docket No. 6, Tr. 38. She also testified that she has had a total knee replacement and breast cancer surgery. Docket No. 6, Tr. 40. Ms. Perrigo testified that because of her impairments, she has pain "all the time." Docket No. 6, Tr. 40. She also testified that she would have a hard time working because she has a psychological problem that keeps her from getting along with other people. Docket No. 6, Tr. 41. She also testified that her depression and anxiety cause her to have problems around other people. Docket No. 6, Tr. 41. Ms. Perrigo testified that she cannot remember things very well. Docket No. 6, Tr. 43. She testified that she can do

simple housework, but she tires quickly. Docket No. 6, Tr. 44. She also stated that she requires help with things like lifting the dumpster lid. Docket No. 6, Tr. 44. She testified that walking even a single block puts significant strain on her body. Docket No. 6, Tr. 50. Ms. Perrigo said that because of hip pain, she cannot bend over. She also complained of back pain. Docket No. 6, Tr. 52-53.

The Defendant argues that:

> the ALJ appropriately considered plaintiff's stated history of knee difficulties, including a December 2009 right knee replacement... The ALJ performed a proper credibility analysis (Tr. 16-22). In addition to considering the medical evidence and plaintiff's treatment history at great length, the ALJ also considered the effects of medication, the types of medication plaintiff took, the FCE, plaintiff's work history, her daily activities (including college classes from 2005 to 2007), and the third-party statement of her friend (Tr. 18-22).
>
> The ALJ concluded that plaintiff's complaints of disability were out of proportion with the record (Tr. 18-22). The record showed, for example, that plaintiff took primarily over-the-counter medication for her knees, shoulders, and hands, and had significant gaps in mental health treatment, all of which could reasonably indicate a condition less severe than that alleged by plaintiff (Tr. 16-22, 41, 511-15, 798-802, 916-38, 967-71). The

type and frequency of treatment plaintiff
receives to treat an impairment is a
relevant factor in determining the
credibility of her subjective symptom
allegations from that impairment. See 20
C.F.R. §§ 404.1529, 416.929. Plaintiff
also performed her own personal care and
household chores, and even attended college
classes for three years, inconsistent with
her allegations (Tr. 16-22, 220-22, 258-61,
286-88, 307-09).

Docket No. 14, p. 14-15.

Both the ALJ and the Defendant rely on the fact that Ms.
Perrigo does some limited work to support the ALJ's conclusion
that, before January 26, 2011, Ms. Perrigo could have
performed a full range of light work. However, courts have
repeatedly stated that the "limited ability to complete light
housework and short errands does not mean [a claimant] has
'the ability to perform the requisite physical acts day in and
day out, in the sometimes competitive and stressful conditions
in which real people work in the real world.'" Tilley v.
Astrue, 580 F.3d 675, 682 (8th Cir. 2009) citing McCoy v.
Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc). In
this case, the ALJ's decision to rely on Ms. Perrigo's
housework is not supported by substantial evidence. Ms.
Perrigo lives alone and has no option but to perform some

limited housework. It is clear from the record that doing work is difficult for her and she has problems doing more than walking a single block. The fact that the requirements of life force Ms. Perrigo to do some housework should not be held against her.

Similarly, the ALJ discounted the third party report of Ms. Perrigo's friend, Anne Hagedorn. Ms. Hagedorn reported, in July of 2007, that Ms. Perrigo had trouble performing most basic functions. Ms. Hagedorn also reported that Ms. Perrigo could not do housework because of pain and issues with fatigue. Docket No. 6, Tr. 213-214. Finally, Ms. Hagedorn stated that mental issues, including depression, severely inhibit Ms. Perrigo's ability to function. Docket No. 6, Tr. 218.

The 8th Circuit Court of Appeals has ruled that, "statements of lay persons regarding a claimant's condition must be considered when an ALJ evaluates a claimant's subjective complaints of pain. "Willcockson v. Astrue, 540 F.3d 878, 880-81 (8th Cir. 2008). That Court went on to say, "witnesses such as the family members who gave statements here often may be the only ones who witness a claimant's

difficulties; though the ALJ is of course not required to accept all lay testimony, we think that it is almost certainly error simply to ignore it altogether." <u>Willcockson</u>, 540 F.3d at 881.  In this case, even though the ALJ referenced Ms. Hagedorn's opinion, he ignored it without sufficient justification, and, to the extent he did consider it, he misrepresented it completely.  The report and the testimony seem remarkably consistent that Ms. Perrigo is unable to do much in the way of work and her activities have been substantially restricted by her various issues.  Even those things which Ms. Perrigo is able to do, such as make herself lunch, walk short distance and shop, cause her pain.  The ALJ's decision to discredit the lay person report is not supported by substantial evidence.

Additionally, contrary to the ALJ's determination, Ms. Perrigo experienced severe impairments prior to January 26, 2011.  See the 3rd party Vocational Rehabilitation records, Docket No. 6, Tr. 248-265.  Ms. Perrigo's interaction with Iowa Vocational Rehab began on November 15, 2011.  As she reported at that time:

> [Ms. Perrigo] was injured while working at
> Winnebago in February 2003.  She felt a
> popping in her shoulder.  She was diagnosed
> with a tear in her rotator cuff... [Ms.
> Perrigo] also has a diagnoses of
> fibromyalgia, arthritis, and discoid lupus.
> Her joints ache and her nerve endings burn.
> She says that she is stiff in the morning
> and literally pulls herself out of bed.
> She does not sleep well.  This was
> diagnosed bout six or seven years ago.  In
> regards to the lupus, [Ms. Perrigo] has
> scarring on her nose and face... [Ms.
> Perrigo's scars are] very noticeable and
> [are] disfiguring.... [Ms. Perrigo] has
> high blood pressure, which she is supposed
> to be taking medication, but can not afford
> at this time.  She has a history
> depression.

Docket No. 6, Tr. 255.

In Ms. Perrigo's continued interaction with Iowa Vocational Rehab, it is clear that organization had concerns about Ms. Perrigo's ability to rejoin the work force.  See a report dated November 1, 2005, where the vocational counselor suggested Ms. Perrigo pursue a Social Security disability claim.  Docket No. 6, Tr. 258.  See also, the Functional Report filled out by Ms. Perrigo on July 7, 2007.  Docket No. 6, Tr. 219.  In that report, Ms. Perrigo states that she has trouble doing even basic functions such as grasping a kitchen knife.  Docket No. 6, Tr. 221.  She described recurrent pain

in her knees, elbows, and shoulders. Docket No. 6, 227. All
of this testimony seems remarkably consistent throughout the
record.

Additionally, Ms. Perrigo's testimony is supported by the
medical evidence in this case. Again, Ms. Perrigo did not set
out a specific section challenging the ALJ's RFC determination
based upon the medical evidence. However, Ms. Perrigo did
argue:

> [i]f a fifty plus year old woman with a
> documented history of discoid lupus, right
> shoulder decompression and clavical
> resection, right knee replacement, a
> radical mastectomy on the right, carpal
> tunnel syndrome on the right, obesity as a
> severe impairment, a warning that left knee
> replacement is imminent, and fibromyalgia
> – all documented while still insured for
> Title II benefits, as well as 62 visits to
> physicians in four different medical
> clinics in eight (8) years, testified at
> hearing that her arm is "weak and doesn't
> reach" and that her arms and legs are
> "killing her", she should be believed...
> A preponderance of the medical evidence in
> this record compels a finding that
> plaintiff has been disabled under Sections
> 216(i), 223(d), and 1614(a)(3)(A) of the
> Social Security Act beginning May 18, 2004
> and is entitled to receive benefits for the
> period from May 18, 2004 through January
> 25, 2011...

Docket No. 11, p. 11.

As has been repeatedly stated:

> [t]he opinion of a treating physician
> should not ordinarily be disregarded and is
> entitled to substantial weight. A treating
> physician's opinion regarding an
> applicant's impairment will be granted
> controlling weight, provided the opinion is
> well-supported by medically acceptable
> clinical and laboratory diagnostic
> techniques and is not inconsistent with the
> other substantial evidence in the record.

Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). In this case, Ms. Perrigo has a long history of treating for a variety of serious illnesses, including fibromyalgia and discoid lupus erythematosus, that predate her alleged onset date.[4] Additionally, Ms. Perrigo's medical issues have required surgical intervention several times prior to January 26, 2011. Dr. Mark Palit operated on plaintiff's right shoulder at Trinity Regional Medical Center in Fort Dodge, Iowa, on September 27, 2004. Docket No. 6, Tr. 355-356. The procedure

---

[4] The Eighth Circuit held that fibromyalgia, "which is pain in the fibrous connective tissue components of muscles, tendons, ligaments, and other white connective tissues, can be disabling" and "often leads to a distinct sleep derangement which often contributes to a general cycle of daytime fatigue and pain." Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998), citing Cline v. Sullivan, 939 F.2d 560, 563, 567 (8th Cir. 1991). The Court further described fibromyalgia as a "degenerative disease which results in symptoms such as achiness, stiffness, and chronic joint pain."

involved resection of the acromion.[5]   The September 2004 surgery was done to resolve the torn rotator cuff Ms. Perrigo suffered at work on February 1, 2003.   Additionally, Ms. Perrigo developed breast cancer, a carcinoma of the right breast, and underwent a right modified radical mastectomy at Siouxland Surgery Center in Dakota Dunes, South Dakota, on December 6, 2006.   Docket No 6, Tr. 401.   Finally, Dr. J. Michael Donohue performed a right total knee arthroplasty on plaintiff on December 14, 2009, at Lakes Regional Hospital in Spirit Lake, Iowa.   Docket No. 6, Tr. 872.   Another problem Ms. Perrigo has suffered since prior to her alleged onset date is bilateral carpal tunnel syndrome.   Docket No. 6, Tr. 343.

Ms. Perrigo has also had mental health issues through the period between her alleged onset date and January 26, 2011. As stated in the Plaintiff's brief:

> Plaintiff was hospitalized in the Mental Health Unit at Spencer Hospital from May 27, 2009 to June 5, 2009.  (Tr. pp. 773). Her Global Assessment of Functioning score was 27 on admission and 35 on discharge. (Tr. p. 773).  The treating psychiatrist, Dr. M. Christine Segreto, was obviously concerned for plaintiff's future.   Dr. Segreto stated:  ...  I do not think this patient can live [in]dependently.  She probably needs to go to a residential care facility until she can get on disability

---

[5]   The acromion is the bony point of the shoulder.

> and she needs somebody to help get her on
> disability.

Docket No. 11, p. 2-4, citing Docket No 6, Tr. 778.

The ALJ gave little weight to the opinions of physician's assistant James Runsch and Dr. Jeffrey Krohn, who, in 2007, determined that Ms. Perrigo had serious limitations with walking, lifting and squatting. Instead, the ALJ gave great weight to the opinion of therapist Stephanie McClellan, who, in 2009, determined Ms. Perrigo could do a full range of light physical demand level work. However, the ALJ's decision to credit Ms. McClellan's conclusions at the expense of Dr. Krohn, and the rest of Ms. Perrigo's medical history, is not supported by substantial evidence. The record is replete with instances of treating doctors and non-treating doctors opining that Ms. Perrigo has extreme difficulties functioning. See Dr. Segreto's opinion cited above; see also Dr. Goerss' report, which notes Ms. Perrigo's significant medical history and states that because plaintiff's "skills are primarily factory work, this would probably cause her to have disability." Docket No. 6, Tr. 729. Although some of these are conclusory opinions which are not binding up the ALJ, the weight of the medical evidence in this case makes clear that Ms. Perrigo has been under a disability since her alleged

onset date.  Accordingly, the ALJ's RFC is not supported by substantial evidence.

## B.  Hypothetical to the Vocational Expert

As has been repeatedly stated, "[a] vocational expert's testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments."  Buckner v. Astrue, 646 F.3d 549, 560–61 (8th Cir. 2011).  "[T]he hypothetical need not frame the claimant's impairments in the specific diagnostic terms used in medical reports, but instead should capture the concrete consequences of those impairments."  Id. (quoting Hulsey v. Astrue, 622 F.3d 917, 922 (8th Cir. 2010)).

As stated above, the ALJ's RFC is flawed because the ALJ's determinations regarding credibility and medical evidence are not supported by substantial evidence. Accordingly, the Plaintiff challenges the hypothetical posed to the vocational expert.  It is true that the ALJ's hypothetical questions do not incorporate all of Ms. Perrigo's proven impairments.  Consequently, those determinations, and the ALJ's reliance on them, are not supported by substantial evidence.  Unfortunately, the Plaintiff's attorney did not ask the vocational expert a hypothetical question that

incorporated all of Ms. Perrigo's limitations.  However, one exchange between the ALJ and the vocational expert is instructive.  After answering the ALJ's first hypothetical, the vocational expert corrected himself, and stated that when considering the limitations in the use of Ms. Perrigo right hand there is "no light" work that she can do.  Docket No. 6, Tr. 58.  This answer is the closest thing in the record to an accurate hypothetical that incorporates all of Ms. Perrigo's limitations, and the vocational expert states she would be unable to do even light work.

## VI.  CONCLUSION

It is clear the ALJ erred in the credibility, medical evidence and RFC sections discussed above.  The question thus becomes whether this Court should remand for further consideration or solely for the purpose of awarding benefits.

This Court has the authority to reverse a decision of the Commissioner, "with or without remanding the cause for rehearing," but the Eighth Circuit has held that a remand for award of benefits is appropriate only where "the record 'overwhelmingly supports'" a finding of disability.  42 U.S.C. 405(g); Buckner v. Apfel, 213 F.3d 1006, 1011 (8th Cir. 2000)

(citing Thompson v. Sullivan, 957 F.2d 611, 614 (8th Cir. 1992).

The Court has considered the entire record, the parties' briefs, and the arguments presented at hearing. When the medical evidence is considered along with Ms. Perrigo's credible testimony, this Court is persuaded that the overwhelming evidence supports a finding of disability from the alleged onset date of May 18, 2004, through January 25, 2011.

**Therefore, the decision of the ALJ is reversed to the extent that the ALJ determined that Ms. Perrigo was not eligible for benefits prior to January 26, 2011. This case is remanded solely for the calculation of benefits from Plaintiff's claimed onset of disability.**

Application for attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA), must be filed within thirty (30) days of the entry of final judgment in this action. Thus, unless this decision is appealed, if Stergiades' attorney wishes to apply for EAJA fees, it must be done within thirty (30) days of the entry of the final judgment in this case.

**IT IS SO ORDERED** this 25th day of March, 2014.

_____
Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa